| | |
|---|---|
| RICKY GAMBLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| WILLIAM BULLARD, SERGEANT ) | |
| GREEN, KATHY J. GADDY, and ) | |
| OFFICER CRIBB, ) | |
| ) | |
| Defendants. ) | |

This matter comes before the court on the respective unopposed motions for summary judgment (DE 35, 41) filed by defendants Kathy J. Gaddy ("Gaddy") as well as William Bullard ("Bullard") and Horace M. Green ("Green"). In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants both motions.

**STATEMENT OF THE CASE**

The court here incorporates the below portion of the statement of the case as set forth in its February 26, 2013, order.

> On October 31, 20011, plaintiff, a state inmate, filed this action pursuant to 42 U.S.C. § 1983 against the above named defendants, as well as, defendant Officer Cribb ("Cribb"). Plaintiff alleged that Gaddy violated his constitutional rights in the course of a "pat and frisk search" while he was wearing only his boxer shorts and a t-shirt. Compl. p. 4. [Specifically, plaintiff alleges that during the search, Gaddy reached between his legs two times and rubbed his genitals in a sexual manner.][1] Plaintiff also alleged that Cribb violated his

---

[1] The record reflects that plaintiff filed a grievance with prison officials complaining that the search offended his religious beliefs as a Muslim. Compl. Ex. 1. Plaintiff, however, did not

> constitutional rights because she watched the alleged "pat and frisk" and did nothing to intervene. Id. Finally, plaintiff alleged that Green, a correctional sergeant, ordered the alleged search and that Bullard, a unit manager, authorized the alleged search. Plaintiff states that he suffered physical and emotional damages.
>
> Defendants subsequently filed a motion for judgment on the pleadings, which was fully briefed. On November 19, 2012, the court entered an order granting defendants' motion for judgment on the pleadings as to plaintiff's claim against Cribb and as to one of plaintiff's supervisor liability claims against Bullard and Green. The court, however, denied defendants' motion as to plaintiff's remaining supervisor liability claim, which was based upon an alleged Tabor Correctional Institution policy permitting prison officials to escort inmates to the shower in boxer shorts.
>
> In response to the court's November 19, 2012, order, Bullard and Green filed an objection to the court's initial order regarding planning and scheduling, and requested that the court stay the entry of a case management order.

On February 26, 2013, the court entered an order granting in part and denying in part defendants' objection to the initial order regarding planning and scheduling and motion to stay entry of a discovery scheduling order. The court also granted Bullard and Greens' request for a more definite statement, and directed plaintiff to clarify his supervisor liability claim. Plaintiff complied with the court's order to clarify his supervisor liability claim.

Green and Bullard, as well as, Gaddy subsequently filed respective motions for summary judgment arguing that plaintiff failed to establish a constitutional violation. Alternatively, defendants each assert the affirmative defense of qualified immunity. Although he was notified of defendants' motions, plaintiff did not respond.

---

allege in his complaint that the search violated his religious beliefs, and such a claim is not before the court.

## STATEMENT OF FACTS

Plaintiff, an intensive control ("Icon")[2] inmate housed at Tabor Correctional Institution ("Tabor") challenges a search that occurred on May 28, 2011, on Tabor's Gray Unit, which housed Icon and Maximum Control inmates. Bullard Aff. ¶¶ 5, 6. On this date, Bullard was the unit manager of the Gray Unit and Green was a correctional sergeant with supervisory responsibility over several pods of the Gray Unit. Bullard Aff. and Green Aff. ¶ 6. Also on the date of the incident, the Gray Unit had a written inmate rule which provided: "All inmates must wear boxers and shower shoes when going to and from the shower."[3] Bullard Aff. ¶ 9. Further, both the North Carolina Department of Public Safety ("DPS") and Tabor have a policy permitting routine pat and frisk searches to be conducted whenever an inmate moves from one area at Tabor to another. See Answ. Ex. B, pp. 2-3 and Ex. C, p. 3. Additionally, correctional staff of either sex are authorized to conduct routine searches of male and female inmates. Id.

On the date at issue, Green gave an order to the unit officers to conduct inmate showers. Green Aff. ¶ 11. Gaddy and Cribb were assigned to provide security during Icon inmate showers. Gaddy Aff. and Cribb Aff. ¶ 18. After plaintiff was placed in handcuffs and removed from his cell for his shower, Gaddy conducted a brief routine pat and frisk search of plaintiff in the presence of

---

[2] Icon "is the long term removal of close custody felon . . . inmates from the general population to confinement in a secure area" with "[t]he intent . . . [to] control . . . offenders whose behavior has proven to be repeatedly disruptive to the operations of the facility, non-compliant with instructions and orders, or as a transition following assignment to a maximum control status." North Carolina Department of Correction Division of Prisons Policy and Procedures Chpt. C, § .1300(a); Def.s' Mem. Ex. D1.

[3] Bullard, in his affidavit, states that a copy of the Gray Unit Inmate Rules in effect on the date of the incident no longer is available. Bullard Aff. ¶ 9. However, defendants have provided a copy of the Gray Unit Inmate Rules which was effective October 27, 2011, and included the same language as the prior rule. Id. and Bullard Mem. Ex. G-1.

3

Cribb. Gaddy Aff. and Cribb Aff. ¶ 21. In the course of conducting the search, Gaddy ran her hand and patted her hands along plaintiff's body in an effort to determine whether plaintiff had any weapons or contraband on his person. Id. Gaddy's pat and frisk search included plaintiff's upper thigh area. Id. Gaddy states that she made no contact, purposeful, accidental, or incidental, with plaintiff's genitals. Gaddy Aff. ¶ 21. Further, the search was not prolonged, secreted, or conducted outside of the presence of other correctional officers. Gaddy Aff. and Cribb Aff. ¶ 22. Rather, the search was conducted outside of plaintiff's cell, in the hallway (among the most public areas of Tabor), and in the presence of Cribb. Id. Gaddy and Cribb estimate that the search lasted approximately ten (10) seconds. Id. ¶ 23. Moreover, Gaddy's contact with plaintiff's upper thigh area occurred for approximately a fraction of a second. Id. At no time did plaintiff object or complain about the pat and frisk or otherwise put Gaddy and Cribb on notice that he believed the contact was inappropriate or unwarranted. Id. ¶ 24.

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

4

(1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. <u>Anderson</u>, 477 U.S. at 250.

B.  Analysis

Defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).

      1.  Fourth Amendment

The Fourth Amendment guards against unreasonable searches and seizures. U.S. Const. Amend. IV. While the Fourth Amendment applies to lawfully confined prisoners, inmates have much more limited privacy interests than those not incarcerated. <u>Bell v. Wolfish</u>, 441 U.S. 520, 545-46 (1979); <u>Lee v. Downs</u>, 641 F.2d 1117, 1119 (4th Cir. 1981). A prison regulation that encroaches on an inmate's Fourth Amendment right "is valid if it is reasonably related to legitimate penological interests." <u>Turner v. Safley</u>, 482 U.S. 78, 85 (1987); <u>see also</u>, <u>Bell</u>, 441 U.S. at 545-46. The court must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification initiating it, and the place in which it is conducted." <u>Bell</u>, 441 U.S. at 559 (citations omitted). In cases in which an inmate asserts that a prison policy violates the Constitution, courts should defer to prison officials' expertise when determining whether a particular policy violates any constitutional provision. <u>Id.</u> at 547; <u>Block v. Rutherford</u>, 468 U.S. 576, 584-585 (1984). The burden

of proof under the Turner analysis is on the inmate to disprove the validity of the prison regulation at issue. Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

The court first addresses plaintiff's challenge to the Tabor policy which permits prison officials to escort inmates to the shower clothed only in boxer shorts. In support of their motion for summary judgment, defendants state that both Tabor's boxer short/shower and pat and frisk search policies are necessary for institutional and personal security due to the fact that Icon inmates pose an increased security risk and regularly carry weapons or contraband when they leave their cells. Bullard Aff. ¶ 21. Additionally, the showers used by Icon inmates are used by inmates on other units, and often are used as a drop-off point for weapons and other contraband. Id.

Plaintiff has not presented any evidence refuting defendants' position. Based upon the foregoing, the court finds that the policies at issue in this action are reasonably related to legitimate penological interests. See Hudson v. Palmer, 468 U.S. 517, 526-527 (1984); Barbour v. Western Regional Director VDOC, No. 7:08-CV-598, 2008 WL 5062126, at *4 (W.D. Va. Nov. 28, 2008) (finding that prison officials have a security interest in ensuring that inmates housed on Icon status have no opportunity to smuggle contraband into or out of their cells), aff'd, 324 F. App'x 282 (4th Cir. May 19, 2008).[4] Thus, plaintiff has failed to establish a constitutional violation, and Bullard and Green are entitled to qualified immunity for this claim.

The court now turns to plaintiff's claim that Gaddy violated his rights pursuant to the Fourth Amendment when she "rubbed [his] genitals twice like in an sexual manner" during the pat and frisk

---

[4] Although this issue was not directly raised by plaintiff, the court finds that the policy of allowing female officers to conduct pat and frisk searches of male inmates serves a valid penological interest in hiring female guards. Riddick v. Sutton, 794 F. Supp. 169, 171-72 (E.D.N.C. 1992).

search on May 28, 2011. Compl. p. 4. The Fourth Circuit Court of Appeals has recognized a limited right to bodily privacy. See Lee, 641 F.2d at 1119; Etters v. Bennett, No. 5:09-CT-3187-D, 2011 WL 976472, at *10 (E.D.N.C. Mar. 16, 2011), appeal dismissed, 444 F. App'x 686 (4th Cir. Aug. 30, 2011). Notably, the Fourth Circuit has held that a body cavity search, which is a more intrusive search than the search in the instant action, does not violate the Fourth Amendment if it is reasonable and not motivated by punitive intent. Bushee v. Angelone, 7 F. App'x 182, 184 (4th Cir. Mar. 27, 2001) (citing Bell, 441 U.S. at 545-546 ).

As stated above, the pat and frisk search of plaintiff, an Icon inmate, was reasonably related the legitimate penological interest of both personal and institutional security. There is no indication in the record that the search was motivated by any punitive intent. Gaddy and Cribb both testified that the approximately ten (10) second search was not "prolonged, secreted or conducted outside of the presence of other officers." Id. ¶¶ 22, 23. Finally, Gaddy and Cribb state that plaintiff did not object or complain during the pat and frisk search at issue. Id. ¶ 24. Plaintiff has not met his burden of presenting any evidence to the contrary. Accordingly, based upon the foregoing, the court finds that Gaddy's brief pat and frisk search of plaintiff did not violate the Fourth Amendment, and she is entitled to qualified immunity.

    2.    Eighth Amendment

"In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted)). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic

7

human need was objectively 'sufficiently serious' "–and the second prong is subjective–the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " See Strickler, 989 F.2d at 1379 (quotations omitted).

Beginning with the first prong of the Eighth Amendment test, courts considering claims involving alleged inappropriate touching, similar to the case before the court, have found no Eighth Amendment violation. See Boxer v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006) (affirming dismissal of Eighth Amendment claim after finding that "a female prison guard's solicitation of a male prisoner's manual masturbation, even under the threat of reprisal, does not present more than *de minimis* injury."); Jackson v. Madery, 158 F. App'x 656, 661-62 (6th Cir. 2005) (finding allegation of rubbing and grabbing of inmate's buttocks in a degrading manner did not amount to an Eighth Amendment violation); Parker v. Singletary, No. 1:09-cv-29-MP-GRJ, 2011 WL 720065, at *3 (N.D. Fla. Jan. 26, 2011) (holding no Eighth Amendment violation where "defendant pulled Plaintiff's shorts down and attempted to perform oral sex on him.") Based upon the foregoing, plaintiff has failed to establish the first prong of the Eighth Amendment test.

Turning to the second prong of the Eighth Amendment test, the court now determines whether Gaddy acted with deliberate indifference. "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995).

Generally, isolated incidents of inappropriate touching in the prison context do not violate the Eighth Amendment. See Boddie v. Schneider, 105 F.3d 857, 861 (2d Cir. 1997) ("[I]solated

8

episodes of harassment and touching . . . are despicable . . . But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court.") (citing Farmer, 51 U.S. at 833-844). Further, in this case, plaintiff has not presented any evidence to suggest that any inappropriate contact was intentional, purposeful, or reckless. Put simply, the incidental touching of plaintiff's genital area is not sufficient to satisfy the second prong of the Eighth Amendment test. Thus, because plaintiff has failed to satisfy either prong of the Eighth Amendment test, he has not established a constitutional violation, and Gaddy is entitled to qualified immunity.

## CONCLUSION

Based upon the foregoing, defendants' respective motions for summary judgment (DE 35, 41) are GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 12th day of November, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge